# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

|                                   |     |                              |
|-----------------------------------|-----|------------------------------|
| MICHAEL ZUCARO,                   | )   |                              |
|     Plaintiff, | )  |                              |
|                                   | )   |                              |
| v.                                | )   | CIVIL ACTION NO. 16-00089-N  |
|                                   | )   |                              |
| ANAND PATEL, RAMAN PATEL,         | )   |                              |
| and GULF COAST MANAGEMENT         | )   |                              |
| COMPANY, LLC,                     | )   |                              |
|     Defendants. | ) |                              |

## ORDER

This action is before the Court on the Motion for Default Judgment under

Federal Rule of Civil Procedure 55(b) (Doc. 14) filed by Plaintiff Michael Zucaro.

Upon consideration, the Court finds that the motion is due to be **GRANTED in part**

and **DENIED in part**.[1]

---

[1]     Under S.D. Ala. GenLR 73(c) and 28 U.S.C. § 636(c), this case has been randomly assigned to the undersigned United States Magistrate Judge for all purposes, including entry of a final judgment, as set out in the Notice of Assignment to United States Magistrate Judge for Trial entered March 1, 2016. (Doc. 2). The Notice of Assignment informs the parties that they "have the right to have this action reassigned to a United States District Judge for trial and disposition," and makes clear that "[a]ny party may request reassignment by" confidentially emailing the Clerk of Court a "Request for Reassignment to a United States District Judge."

Zucaro, through counsel, has been electronically served with the Notice of Assignment, and was required to "serve a copy of th[e] notice and attachments immediately upon all other parties that have been served with the summons and complaint pursuant to Rules 4 and 5, Federal Rules of Civil Procedure." (Doc. 2 at 1). *See also* S.D. Ala. GenLR 73(c)(2) ("When an action is referred to a Magistrate Judge pursuant to this Rule, the Clerk shall notify all parties who have appeared by sending a Notice of Assignment of Case to a Magistrate Judge for Trial. In accordance with Fed. R. Civ. P. 4 and 5, it shall be the responsibility of Plaintiffs to immediately serve a copy of this Notice on those parties named as Defendants but who have not appeared."). Inasmuch as no party, to date, has returned to the Clerk of Court a Request for Reassignment, there presently exists implicit consent to the undersigned conducting all proceedings in this case. *See Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("[T]he Supreme Court held in *Roell v. Withrow*, 538 U.S. 580, 123 S. Ct. 1696, 155 L. Ed. 2d 775 (2003), that consent to a magistrate judge's

# I.  General Legal Standards

"When a defendant has failed to plead or defend, a district court may enter judgment by default.  Fed. R. Civ. P. 55(b)(2). Because of [this Circuit's] strong policy of determining cases on their merits, however, default judgments are generally disfavored.  While a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law.  Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered."  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244-45 (11th Cir. 2015) (per curiam) (quotations, footnote, and some citations omitted).  *See also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (" 'A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations.' " (quoting *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975))).

> Conceptually, … a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.,* 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").
>
> When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,*

---

jurisdiction can be inferred from a party's conduct during litigation.  *Id.* at 582, 123 S. Ct. 1696. The Court refused to adopt a bright-line rule requiring express consent, instead accepting implied consent 'where ... the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge.'  *Id.* at 589–90, 123 S. Ct. 1696.").

556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S. Ct. at 1965).

*Surtain*, 789 F.3d at 1245.

Moreover, in cases involving a default judgment, "there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment." *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982).

## II.     Procedural History

On February 29, 2016, Zucaro commenced this civil action by filing a Complaint (Doc. 1) against Defendants Anand Patel, Raman Patel, and Gulf Coast Management Company, LLC ("GCMC") (collectively, "the Defendants").    In response to an order of the Court finding deficient certain allegations in the initial Complaint supporting subject matter jurisdiction (*see* Doc. 4), Zucaro subsequently filed his two-count First Amended Complaint ("FAC"), the operative pleading in this action.[2]    (Doc. 6).   Count I alleges a state law claim of breach of personal guaranty against the Patels, while Count II alleges a state law claim of breach of contract

---

[2] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)).    *See also, e.g., Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

against GCMC.   (*See id.*).

On March 5, 2016, the Patels were each personally served with a summons and the FAC by private process server.   (*See* Docs. 7, 8).   On March 8, 2016, the process server also delivered a summons and the FAC to GCMC at its Saraland, Alabama address, leaving a copy of those documents with "Zakiah (last name not given), Hotel Clerk."   (Doc. 9).   To date, none of the Defendants has filed a responsive pleading or otherwise appeared in this action.

Upon Zucaro's application (Doc. 10), the Clerk of Court entered default against the Defendants under Federal Rule of Civil Procedure 55(a) on April 5, 2016. (Doc. 11).   Notice of entry of default was sent to the Defendants by certified mail. The notice sent to GCMC was accepted at GCMC's primary address by "Sherri Jacobi" on April 7, 2016.   (Doc. 12).   The notices sent to the Patels were returned to the Court as "unclaimed."   (Docs. 14, 15).[3]   On May 3, 2016, Zucaro filed the

---

[3]     Rule 55(a) does not specify that entry of default need be noticed on a party, and a " 'defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted.' "   *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2692 at 85 (3d ed. 2004)).   Moreover, under the current version of Rule 55(b)(2), a party against whom default judgment is sought is only required to be served with written notice of the application if that party "has appeared personally or by representative…"   *See also* Fed. R. Civ. P. 5(a)(2) ("No service is required on a party who is in default for failing to appear…").

"The appearance required by [Rule 55(b)(2)] has been broadly defined, and not limited to a formal court appearance."   *Charlton L. Davis & Co., P. C. v. Fedder Data Ctr., Inc.*, 556 F.2d 308, 309 (5th Cir. 1977) (citing cases indicating that a "letter," "letters and phone calls," and a "claim and cost bond" could constitute "appearance") ("The plaintiff knew Financial had a clear purpose to defend the suit. The knowledge came from a phone call and a letter responsive to plaintiff's formal Court action." (quotation omitted)).   *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent in this Circuit all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981); *S.E.C. v. Getanswers, Inc.*, 219 F.R.D. 698, 700 (S.D. Fla. 2004) (While Rule 55(b)(2)'s notice requirement "only applies when the defendant has

present motion for default judgment against the Defendants.    (Doc. 13).

### III.    Analysis

#### A.    Subject Matter Jurisdiction

"It is . . . axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress."   *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).   Accordingly, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking."   *Id.*

The FAC alleges diversity of citizenship under 28 U.S.C. § 1332(a) as the sole basis for subject matter jurisdiction.   Section 1332(a)(1) grants district courts "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."   Zucaro, a natural person, is alleged to be a citizen of the state of Nevada, while natural person Defendants Raman and Anand Patel are both alleged to be citizens of the state of Alabama.   (*See* Doc. 6 at 3, ¶¶ 10 – 12).

However, the FAC is inconsistent regarding the citizenship of GCMC, a limited liability company.   In the "Jurisdiction and Venue" section, Raman Patel is

---

'appeared,' the defendant does not have to make a formal appearance to trigger the notice requirement. The defendant must simply manifest a clear intention to defend."). Nevertheless, nothing in the record supports a determination that any Defendant has "appeared" in this action (e.g. filings, attempts to contact the Court).

alleged to be the sole member of GCMC, a limited liability company.   *See* (*id.*, ¶ 13);

*Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021

(11th Cir. 2004) (per curiam) (for purposes of diversity jurisdiction, "a limited

liability company is a citizen of any state of which a member of the company is a

citizen").[4]   Later, though, the FAC identifies Anand Patel as "Managing Member" of

GCMC; Anand also signed the loan documents at issue on behalf of GCMC as

"Owner/Member and President."   (*See* Doc. 6 at 7, ¶ 13; Doc. 6-1).

Generally, "if a complaint's factual allegations do not assure the court it has

subject matter jurisdiction, then the court is without power to do anything in the

case." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).   However,

a district court may proceed "if the evidence submitted during the course of the

proceedings cures any jurisdictional pleading deficiency by convincing [it] of the

parties' citizenship."   *Id.*   Considering the allegations in the FAC together with the

attached exhibits,[5] the record supports the conclusion that GCMC has no other

members but the Patels, both of whom are Alabama citizens.   Thus, GCMC is also a

citizen of Alabama for purposes of diversity.

Because no Defendant is a citizen of the same state as Zucaro, complete

diversity exists among the parties.   Moreover, § 1332(a)(1)'s requisite amount in

---

[4] Contrary to the allegation that Raman Patel is GCMC's sole member, a "Corporate Resolution" attached to the promissory note at issue states that Anand Patel is "Owner/Member and President" of GCMC.   (*See* Doc. 6-1 at 10).   Nevertheless, Anand Patel is also alleged to be an Alabama citizen.

[5] "Under Rule 10(c) Federal Rules of Civil Procedure, [copies of written instruments that are exhibits to a pleading] are considered part of the pleadings for all purposes..." *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) (per curiam).

controversy is satisfied because Zucaro expressly seeks damages of "$650,000 in principal, plus interest, costs, and fees." (*See* Doc. 6). Thus, the Court is satisfied that subject matter jurisdiction exists in this action.

### B. Service of Process, Personal Jurisdiction, and Venue

"Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served." *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). The record reflects that the Patels were each personally served with the summons and First Amended Complaint on March 5, 2016. *See* (Docs. 7, 8); Fed. R. Civ. P. 4(e)(2)(A) & (l)(1). Zucaro does not explain how "Zakiah (last name not given), Hotel Clerk," is an agent "designated by law to accept service of process on behalf of" GCMC. (Doc. 9). However, records from the Alabama Secretary of State, accessed through its online "Business Entity Search" system,[6] list Defendant Raman Patel as GCMC's registered agent. Accordingly, the Court finds that all Defendants have been sufficiently served with process in this action.

The Amended Complaint (Doc. 6) also alleges sufficient facts, deemed admitted by the Defendants' default, establishing that personal jurisdiction and venue in this Court are proper.[7]

---

[6]   http://www.sos.alabama.gov/vb/inquiry/inquiry.aspx?area=Business%20Entity   (last visited Sept. 6, 2016).

[7] "A defaulted defendant … can defend by challenging the jurisdiction of the court to enter judgment against him. Thus, for example, a defendant in default still can challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007) (per curiam) (unpublished). *See also United States v. Hall*, Civil Action No. 13-326-KD-N, 2013 WL

### C.    Admitted Factual Allegations

"An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."   Fed. R. Civ. P. 8(b)(6).[8]   Per the well-pleaded allegations of fact in the FAC (Doc. 6), and the documents attached as exhibits thereto (Docs. 6-1, 6-2), the Defendants executed several Promissory Notes and Security Agreements (the "Loans") in favor of Zucaro over a period of several years.   Through the Loans, the Defendants promised to pay Zucaro the principal amounts set forth in each Note, together with interest at the rates provided in the Notes, along with all other fees, charges and amounts as provided or disclosed in the Notes' terms (the "Indebtedness").   (*See* Doc. 6 at $1-2$, ¶¶ $1-2$).

On July 11, 2014, the Defendants each executed a Promissory Note (hereinafter the "July 11, 2014 Note") with Zucaro in the principal amount of $200,000.   A "true and correct copy of" the July 11, 2014 Note is attached to the FAC as "Exhibit A" (Doc. 6-1).   (*See* Doc. 6 at 4, ¶ 18).   It is signed by GCMC as "Borrower" and by each of the Patels as "Borrower and Personal Guarantor" and

---

6844099, at *2 (S.D. Ala. Dec. 30, 2013) (*sua sponte* addressing whether venue and personal jurisdiction were sufficiently shown in granting uncontested motion for default judgment).

[8] The Defendants are also not deemed to have accepted as true Zucaro's allegations interpreting the contracts at issue, as contract construction is primarily an issue of law. *See, e.g., McLemore v. Hyundai Motor Mfg. Ala., LLC*, 7 So. 3d 318, 327 (Ala. 2008) ("When a trial court is faced with a contract issue, it is important for the trial court to determine as soon as practicable the threshold issue whether the contract is ambiguous. If the trial court determines that there is no ambiguity, it must determine the force and effect of the terms of the contract as a matter of law.   However, if the trial court finds the contract to be ambiguous, it 'must employ established rules of contract construction to resolve the ambiguity.   If the application of such rules is not sufficient to resolve the ambiguity, factual issues arise…" (citations and quotations omitted)).

states, in relevant part:

      1.    <u>Principal; Maturity Date</u>.  In consideration of the total sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00), the Borrower [the Defendants, "each and collectively"] promises to repay to the Lender [Zucaro] or his order … the principal sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00), due and payable in full on July 11, 2015 (the 1 year anniversary hereof), plus interest as set forth in paragraph 2…

      2.    <u>Interest</u>.  The Borrower agrees to pay monthly interest to the Lender at the rate of 18% per year, until paid in full, and to make monthly interest payments in the amount of Three Thousand and 00/00 Dollars ($3,000.000) per month, for a guaranteed period of twelve (12) months, and continuing thereafter in the event of any renewals or extensions of this Note, as may be agreed upon in the sole and absolute discretion of Lender.

...

      4.    <u>Term of Loan</u>.  The term of this loan shall be for twelve (12) months from the date of this Note, with interest payments for twelve months guaranteed … Time is of the essence for all payments and terms and performance by Borrower under this Note.

      5.    <u>Security</u>.  The Borrower pledges and confirms as continuing security a first-priority lien on the property described in Addendum A, and by the Security Agreement attached hereto.[9]  The Borrower and Lender agree and confirm that this Promissory Note is secured by a

---

[9] The Security Agreement in Addendum A states: GCMC and Raman H. Patel "hereby confirm, and further grant, bargain, sell to, and permit, Michael Zucaro, as Lender, a continuing security interest and lien on the below described real property [the Hampton Inn, located at 1320 Industrial Parkway, Saraland, Alabama 36571], pursuant to that certain primary lien held by Michael Zucaro dated May 13, 2010, in the amount of Seven Hundred Thousand and 00/00 Dollars, in security on the loan transaction memorialized by the Promissory Note. The Borrower and Lender agree that this Loan and the related Promissory Note and the other prior Promissory Notes from Borrower in favor of Lender are secured by that certain Mortgage recorded on 9/1/2010 in the Probate Records of Mobile County from Gulf Coast Management Company, LLC to Michael Zucaro, at Book 6694, Page 719." (Doc. 6-1 at 8). However, Raman Patel did not sign the Security Agreement. Rather, it was signed by Anand Patel both individually and as "managing member" of GCMC.

first-priority lien to the property of the Borrower pursuant to that certain Mortgage recorded on 9/1/2010 in the Probate Records of Mobile County from Gulf Coast Management Company, LLC to Michael Zucaro, at Book 6694, Page 719.  The Borrower and Lender further agree and stipulate that this Mortgage secures, on a joint and several basis, all aggregate amounts and indebtedness due and owing from Borrower to Lender as of the date hereof, in the aggregate, unpaid principal balance owing of $650,000 as of the date hereof, plus interest and fees thereon.

…

7.    <u>Personal Guaranty</u>.  Notwithstanding the foregoing pledge of security and confirmation of mortgage collateral, Raman H. Patel and Anand Patel, each personally, absolutely, irrevocably and unconditionally does further for himself, his estate, heirs, and successors, guarantee to the Lender the full and prompt payment when due, whether at maturity, by acceleration, or otherwise, the full amount of all the indebtedness, liabilities and obligations of the Borrower to the Lender of every kind and nature, whether absolute or contingent, continuing or not, due or to become due, primary or secondary, now existing or hereafter arising, secured, or unsecured, created directly or acquired indirectly, and however evidenced by this Note or any instruments that create or constitute obligations of the Borrower to the Lender, and in addition, all interest thereon and any fees, costs, and expenses of the Lender's counsel, incurred in connection with any of these Obligations and/or the enforcement of this Guaranty, and any post-bankruptcy petition interest and attorney's fees any other amounts which either Borrower is prohibited or discharged from paying, or which do not otherwise accrue as part of the Obligations due to Borrower's discharge…

…

10.    <u>Collection Costs and Attorney's Fees</u>.  The Borrower shall pay all costs of collection, replevin or any other or similar type of cost if he is in default.  In addition, if the Lender retains an attorney to collect upon this Promissory Note, the Borrower agrees to pay any fee the Lender incurs with such attorney plus court costs (except as prohibited

by law). The Borrower shall pay Lender's attorney's fees for preparation of these loan documents.

The July 11, 2014 Note fully matured on July 11, 2015. The Defendants defaulted on the July 11, 2014 Note on July 11, 2015, by failing to make payment when due and owing.[10] By correspondence dated September 28, 2015 (the "Notice of Default and Demand for Payment"), Zucaro gave notice of default to the Defendants on account of the monetary default for failure to make payments referenced herein. A "true and correct copy of the Notice of Default and Demand for Payment is attached to the FAC as "Exhibit B" (Doc. 6-2). The Notice of Default and Demand for Payment gave the Defendants thirty (30) days to pay the full amount of the Indebtedness, consisting of "the entire principal balance of the Loans in the amount of $650,000.00 Principal, plus accrued and unpaid interest in the amount of $19,500 (the overdue July and September 2015 payments), as of September 1st, 2015, legal fees … in the amount of $6,000.00 related to the loss and/or impairment of the collateral and Mortgage for the Loans, plus an additional $25 bounced check charge," as well as interest accruing "in the amount of $325.00 per diem." As of the making of the FAC, the Note is in default for nonpayment. The Defendants have failed to comply with the terms of their contracts and pay the Indebtedness owed to Zucaro. (*See* Doc. 6 at 5 – 6, ¶¶ 20 – 22, 24 – 26).[11]

---

[10] (*See* Doc. 6-1 at 2, § 8 ("The Borrower will be in default if any one or more of the following occur: (a) The Borrower fails to make a payment within ten days after it becomes due; (b) The Borrower fails to pay or keep any promise or covenant contained in this Promissory Note, or the Security Agreement attached hereto…")).

[11] These factual allegations are essentially repeated in an affidavit by Zucaro attached to the motion for default judgment. (Doc. 13-5).

## D.    Claims

> "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill,* 825 So.2d 100, 105 (Ala. 2002). The elements of a valid contract include: " 'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.' " *Ex parte Grant,* 711 So.2d 464, 465 (Ala.1997) (quoting *Strength v. Alabama Dep't of Fin., Div. of Risk Mgmt.,* 622 So.2d 1283, 1289 (Ala. 1993)).

*Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (per curiam).[12]   "A promissory note is a form of contract; therefore, it must be construed under general contract principles."   *Bockman v. WCH, L.L.C.*, 943 So. 2d 789, 795 (Ala. 2006).

Similarly, " '[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty.' "   *Sharer v. Bend Millwork Sys., Inc.*, 600 So. 2d 223, 225–26 (Ala. 1992) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987)). " 'Rules governing the interpretation and construction of contracts are applicable in resolving a question as to the interpretation or construction of a guaranty contract.'

---

[12] "In diversity cases, the choice-of-law rules of the forum state determine which state's substantive law applies."   *Am. Family Life Assur. Co. of Columbus, Ga. v. U.S. Fire Co.*, 885 F.2d 826, 830 (11th Cir. 1989).   "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims … The doctrine of *lex loci contractus* governs the validity, interpretation, and construction of the contract. *Cherry, Bekaert & Holland v. Brown,* 582 So.2d 502, 506 (Ala. 1991). The doctrine states that 'a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction.'   *Id.*"   *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004).   The promissory note in this action provides that it "shall be governed by the laws of the State of Alabama, without reference to its conflicts of laws principles."   (Doc. 6-1 at 3, § 12).

" *Eagerton v. Vision Bank*, 99 So. 3d 299, 304 (Ala. 2012) (quoting *Gov't St. Lumber Co. v. AmSouth Bank*, 553 So. 2d 68, 75 (Ala. 1989)).

The Court finds that the FAC sufficiently alleges facts, deemed admitted by the Defendants' default, establishing the Defendants' breach of the promissory note and guaranties attached to the FAC (Doc. 6-1).

### E.    Damages

### *1.    Principal*

The terms of the promissory note sufficiently evidence that Zucaro is entitled to $650,000 in principal from the Defendants, jointly and severally.

### *2.    Interest*

In addition to the $650,000 in principal, the motion for default judgment requests damages of $89,050 in accrued interest "[a]s of May 3, 2016…"   The motion further asserts that "[i]nterest continues to accrue on the unpaid principal at the rate of 18% per annum (or $325 per diem)" and requests the Court also award interest on the unpaid principal "[f]or every day past May 3, 2016, upon which judgment is not entered against Defendants, … calculated at the per diem rate of 18%" (i.e. "$325 per diem").   (Doc. 13 at 4, ¶¶ 15 – 17).   It appears, then, that Zucaro claims entitlement to an 18% per annum interest rate on the full principal amount of the indebtedness, $650,000.00.   The FAC and the evidence of record, however, do not support such an interest award on the full principal amount. Rather, sections 1 and 2 of the promissory note indicate that the 18% per annum interest rate applies only to the $200,000 loaned under the note.   *See supra.*

Though the promissory note also indicates the Defendants reaffirmed a total debt of $650,000 in principal, "plus interest and fees thereon," *see supra*, the promissory note does not indicate what interest rate applies to the remaining $450,000 in principal. Accordingly, the Court will only award 18% per annum interest on $200,000 of the principal amount, running from the execution of the July 11, 2014 Note to entry of judgment.

### 3. Attorneys' Fees and Costs

Zucaro has also requested an award of $26,126.00 in attorneys' fees and $638.74 in costs incurred as of May 3, 2016, in enforcing the promissory note and guaranties against the Defendants. "It is beyond dispute that in this diversity action, the substantive law to be applied is the []law of [Alabama], while federal law governs the procedure. *See Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). [Alabama] law controls both the questions of the availability of attorneys' fees and the standards to determine when the attorneys' fees should be awarded." *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1577 (11th Cir. 1990). *See also Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002) ("Since Boland's claim for attorneys' fees sounds in state law and reaches us by way of federal diversity jurisdiction, we apply the substantive law of Florida, the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)."); *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 n.13 (11th Cir. 2001) (" 'In an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to

attorney's fees or giving a right thereto ... should be followed.' " (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) (citations and quotations omitted))); *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 (5th Cir. 1980)[13] ("In an ordinary diversity case, awards of attorney's fees are governed by applicable state law." (citing *Alyeska Pipeline*, 421 U.S. at 259 n.31)); *Schilling v. Belcher*, 582 F.2d 995, 1003 (5th Cir. 1978) ("Because this is a diversity case, the validity of the fee award must be tested under Florida law.").

Alabama follows the "American rule," whereby attorney fees may be recovered if they are provided for by statute or by contract. *E.g., Jones v. Regions Bank*, 25 So. 3d 427, 441 (Ala. 2009). Here, by executing the promissory note, the Defendants agreed to "pay all costs of collection, replevin or any other or similar type of cost if … in default." The Defendants also agreed that, if Zucaro "retains an attorney to collect upon th[e] Promissory Note, the [Defendants would] pay any fee [Zucaro] incurs with such attorney plus court costs (except as prohibited by law)." *See supra*. Although the contract does not specifically limit the award of attorney fees to a "reasonable" amount, " 'Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.' " *Gore v. White*, 96 So. 3d 834, 846 n.3 (Ala. Civ. App. 2012) (quoting *Willow Lake Residential Ass'n, Inc. v. Juliano*, 80 So. 3d 226, 241 (Ala. Civ. App. 2010)).

Where, as here, attorneys' fees and costs are provided for by promissory note, "[i]n determining the fees to which the payees are entitled, we look to the law of the

---

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

state in which the security instruments were executed." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1148 (11th Cir. 1993) (per curiam) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1487 (5th Cir. 1990)) (applying "federal loadstar approach as developed by federal case law" as to reasonableness of fees after finding that Florida follows that approach, but also noting that Florida law permitted a "reasonable fee" in excess of a limitation in the attorney-client contract). *See also Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 775 F.3d 242, 248 (5th Cir. 2014) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." (quotations omitted));[14] *In re Volkswagen & Audi Warranty Extension Litig.*, 692

---

[14]    The Fifth Circuit first explicitly articulated this holding in *Mathis v. Exxon Corp.*, 302 F.3d 448 (5th Cir. 2002), in which the Fifth Circuit reasoned as follows:

> A fee award is governed by the same law that serves as the rule of decision for the substantive issues in the case. *Kona Tech. Corp. v. S. Pac. Transp. Co.,* 225 F.3d 595, 614 (5th Cir. 2000). Until recently, we had reserved the question whether Texas or federal law governed review of an award's reasonableness. *See, e.g., Mid–Continent Cas. Co. v. Chevron Pipe Line Co.,* 205 F.3d 222, 232 (5th Cir. 2000). Very recently, however, we applied Texas law to this question without noting any reservation of the question. *Northwinds Abatement, Inc. v. Employers Ins.,* 258 F.3d 345, 353–54 (5th Cir. 2001). We now make explicit what was implicit in *Northwinds:* State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision …

302 F.3d at 461-62 (involving mandatory fee award under Texas statute for a prevailing party in a breach of contract suit).

Utilizing the same reasoning as *Mathis*, and applying the "prior panel precedent" rule, the Eleventh Circuit would arguably reach the opposite conclusion.  In *Columbus Mills, Inc. v. Freeland*, the Eleventh Circuit determined that "Georgia law control[led] both the questions of the availability of attorneys' fees and the standards to determine when the attorneys' fees should be awarded" but then, without noting any reservation of the question, applied federal law (specifically, the seminal decision *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292 (11th Cir. 1988)) in determining the reasonableness of the fee

F.3d 4, 15, 21 − 22 (1st Cir. 2012) (holding that "[s]tate law, rather than federal law, governs the determination of the award of attorneys' fees under settlement agreement in federal diversity action, the "interpretation" and "scope" of which is generally "a matter of state contract law," and applying Massachusetts law to "determining attorneys' fees pursuant to a contractual agreement")); *Doyn Aircraft, Inc. v. Wylie*, 443 F.2d 579, 583 (10th Cir. 1971) (applying Kansas law to reasonableness of contractual attorneys' fees in diversity action). Thus, the Court will apply Alabama law in determining whether Zucaro's requested fees and costs are reasonable.[15]

---

award. 918 F.2d at 1577, 1580 − 81. Thus, if the Eleventh Circuit were to "make explicit what was implicit" in *Columbus Mills*, federal law would govern the reasonableness inquiry here. However, the Eleventh Circuit has subsequently suggested, albeit in a non-binding decision, that *Columbus Mills* did not settle this issue. *See Gowen Oil Co. v. Abraham*, 511 F. App'x 930, 934 − 36 & n.5 (11th Cir. 2013) (per curiam) (unpublished) (applying *Norman* in analyzing the reasonableness of attorney fee awarded under Georgia statute but observing: "The district court used federal law to evaluate the reasonableness of the requested amount. Gowen did not object to that, and both parties base their arguments about the reasonableness of the fees on federal law. In any event, as the district court noted, the outcome would be the same under Georgia law. Therefore, we assume, as everyone else has, that federal standards of reasonableness apply. *Cf. Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1578, 1580 (11th Cir. 1990) (following state law in determining whether attorney's fees were available but applying, without comment, federal standards to determine reasonableness)."); 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

[15] Reading *Resolution Trust* literally, it is arguable that Nevada law would apply to the issue. The signature pages to the promissory note indicate that Zucaro was the last signatory, on July 14, 2014 (all Defendants' signatures are dated July 11), and, based on the notarization information, he did so in Nevada, thus making it the state in which the security instrument was executed. However, the undersigned construes the holding of *Resolution Trust* as intending to state what the Fifth Circuit has stated – that state law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision. This determination is bolstered by the Fifth Circuit case *Resolution Trust* cited in support of its holding, which merely noted the unremarkable holding that "in an ordinary diversity case, state rather than federal law governs the issue of the awarding of attorney's fees." *McLeod, Alexander, Powel & Apffel*, 894 F.2d at 1487 (quotation omitted).

Regarding the inquiry into "reasonableness," the Supreme Court of Alabama has held:

> The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court …
>
> This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
>
>> The nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.
>
> These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met.[16]

*Kiker v. Prob. Court of Mobile Cty.*, 67 So. 3d 865, 867-68 (Ala. 2010) (citations and quotations omitted). *Accord, e.g.*, *Regions Bank v. Lowrey*, 154 So. 3d 101, 109 (Ala. 2014). A "fee is clearly excessive when after review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." *Peebles v. Miley*, 439 So. 2d 137, 143 (Ala. 1983) (quotation omitted).

---

[16] "Of course, not all of the criteria will be applicable. Indeed, there would hardly ever be a case where the determination of attorney's fees brought into play every criterion." *Van Schaack v. AmSouth Bank, N.A.*, 530 So. 2d 740, 749 (Ala. 1988) (quotation omitted).

"Parties seeking 'an attorney fee bear the burden of proving their entitlement to an award and documenting their appropriately expended hours.' " *Major Millworks, Inc. v. MAE Hardwoods, Inc.*, 187 So. 3d 714, 723 (Ala. Civ. App. 2015) (quoting *Beal Bank, SSB v. Schilleci*, 896 So. 2d 395, 408 (Ala. 2004)). " '[A] trial court may not order one party to pay another party's attorney's fees without first receiving evidence of the amount of those fees and then determining the reasonableness of that amount.' " *Id.* (quoting *A.B. v. J.B.,* 40 So. 3d 723, 735 (Ala. Civ. App. 2009)). " 'When an applicant for attorney fees "has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." ' " *Beal Bank,* 896 So. 2d at 408 (quoting *Ex parte Edwards,* 601 So. 2d 82, 85 (Ala. 1992) (quoting *Blum v. Stenson,* 465 U.S. 886, 888, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)))

" 'The trial court, in connection with a consideration of the opinion evidence proffered by qualified experts, may call to his aid his own estimate of the value of such legal services after considering the aforementioned elements and, generally speaking, the allowance rests within the sound judicial discretion of the trial court.' " *Beal Bank*, 896 So. 2d at 404 (quoting *Ingalls v. Hare*, 96 So.2d 266, 274 (Ala. 1957)). The trial court also has the right " 'to look to the whole record on the question of the value of attorneys' services, and may treat opinions of witnesses as advisory and may render such decree fixing attorneys' fees as it deems right and proper under all the circumstances.' " *Id.* (quoting *Ingalls*, 96 So. 2d at 274). *See*

*also Rice v. Grove Hill Homeowners' Ass'n, Inc.,* 113 So.3d 659, 663 (Ala. Civ. App. 2012) ("The trial court may rely on its own knowledge and experience in determining the value of the legal services performed and in setting the fee without entertaining evidence of the reasonableness of the fee.").   "[I]f after considering the appropriate factors, a trial court concludes that the billed attorney's fees are unreasonable in amount, the appropriate action is not to deny the claim altogether but to enter a judgment for a reasonable amount of attorney's fees." *Willow Lake Residential Ass'n, Inc. v. Juliano,* 80 So. 3d 226, 242–43 (Ala. Civ. App. 2010) (citing *Beal Bank,* 896 So. 2d 395)).   *Accord SE Prop. Holdings, LLC v. Sandy Creek II, LLC*, Civil Action No. 12-00303-KD-M, 2014 WL 47330, at *6 (S.D. Ala. Jan. 7, 2014) (DuBose, J.) (same).[17]

In support of both the amount and reasonableness of his requested attorneys' fees and costs, Zucaro has presented three affidavits (Docs. 13-3, 13-4, 13-5).   The first affidavit, from Zucaro himself, attests that his attorneys have charged him $26,126 in attorneys' fees and $638,74 in costs in connection with collecting on the subject indebtedness from the Defendants and that he is of the opinion "this is a reasonable fee for the work performed to date."   (Doc. 13-5).

---

[17] Alabama courts have at times employed the federal "lodestar" approach to determining the reasonableness of attorneys' fees awarded to successful class counsel, *see City of Birmingham v. Horn*, 810 So. 2d 667, 680 (Ala. 2001) ("Under Alabama law, there are currently two methods available for the determination of fee awards for attorneys who have litigated successfully on behalf of a class: (1) the common-fund approach and (2) the lodestar approach."), as well as when fees were awarded under a federal statute.   *See, e.g., Johnson v. City of Mobile*, No. 1140433, 2015 WL 5725089, at *19 – 21 (Ala. Sept. 30, 2015) (involving award of fees to prevailing party in Title VII claim).   Neither of these situations applies in this action.

The second affidavit is from Barry W. Andrews, an attorney and partner with Phelps Dunbar, LLP, the law firm providing Zucaro's counsel of record. (Doc. 13-3). Andrews verifies the amount of costs and attorneys' fees requested by Zucaro, explains the work he and four other Phelps Dunbar employees (attorneys and non-attorney) staff have performed since July 2015 in representing Zucaro to collect on the Defendants' indebtedness,[18] avers that the rates charged by Phelps Dunbar employees are "usual and customary" for this legal market, and opines that the total amounts requested are reasonable and were necessarily incurred. While Andrews claims to have attached as "Exhibit A" to his affidavit copies of Phelps Dunbar's invoices and progress reports documenting these amounts, these documents have not been filed in the record.

The third affidavit is from Charles J. Fleming, an attorney not with Phelps Dunbar who has practiced law in this judicial district since 1971. (Doc. 13-4). Fleming avers that he is familiar with the attorneys who have worked on this matter, and with Phelps Dunbar in general, and that he has reviewed the pleadings in this action and Phelps Dunbar's billing statements related to this matter. Based on his knowledge and experience, Fleming opines that Zucaro's requested fees and costs "were reasonable expenditures[,] appear to be necessarily incurred[, and] are comparable to those charged by similar firms for performing similar work.

---

[18] This work includes "analyzing and evaluating Mr. Zucaro's foreclosure rights following the Defendants' default; gathering necessary factual information as to the financial transactions and executed agreements by and between Mr. Zucaro and the Defendants; researching and evaluating relevant legal issues; communicating with the Defendants regarding the default; preparing and sending notice of default and demand for payment; commencing this lawsuit to collect the defaulted debt; and drafting and revising submissions and briefs to the court." (Doc. 13-3 at 2).

"Although all of the criteria set forth must be taken into consideration (though all criteria need not be met) it has been generally recognized that the amount of time consumed should be the first yardstick used by the trial court." *Clement v. Merchants Nat. Bank of Mobile*, 493 So. 2d 1350, 1355 (Ala. 1986). Here, Zucaro has not provided any information as to how many total hours underlie the fees charged by Phelps Dunbar, how many hours of work were performed by each Phelps Dunbar employee who participated in this matter, or the billing rates of the various Phelps Dunbar employees. Similarly, there is no evidence indicating what specific expenses underlie the requested award of costs. Accordingly, the Court is unable to make a "reasonableness" determination as to the requested attorneys' fees and expenses based on the current record.

Upon consideration, Zucaro's request for attorneys' fees and costs made in his motion for default judgment will **DENIED**, **without prejudice** to his ability to again request them in a properly supported, timely filed motion for attorneys fees and expenses under Federal Rule of Civil Procedure 54(d)(2). In addition to the other requirements of Rule 54(d)(2), the motion should, at minimum, provide sufficient evidence of the total number of hours underlying the fees requested, the number of hours performed by each Phelps Dunbar employee involved, the title and billing rate of each employee, and the expenditures underlying the requested award of costs.

## IV.    <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that Zucaro's Motion for Default Judgment under Federal Rule of Civil Procedure 55(b) (Doc. 14) is **GRANTED in part** and **DENIED in part**, such that:

1. Zucaro is awarded $650,000.00 in principal from the Defendants, jointly and severally.

2. Zucaro is also awarded from the Defendants, jointly and severally, eighteen percent (18%) interest *per annum* on $200,000 of the principal amount, accruing from July 11, 2014, to the date of entry of judgment in this action.

3. Zucaro's request for attorneys' fees and expenses is **DENIED**, **without prejudice** to his ability to again request those fees and expenses in a motion under Federal Rule of Civil Procedure 54(d)(2), sufficiently supported as explained above, *see* Section III(E)(3).   Such a motion must be filed and served no later than **Tuesday, September 27, 2016**.

Final judgment in accordance with this Order shall issue by separate document, in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 6th day of September 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**